319-0581 Heartland Polymers Realty, Inc. Appellant v. Polychem Services, Inc. Appley. Mr. Casey, you may proceed when you're ready. May it please the court. Thank you, Your Honor. Good morning to everyone. Good morning, Mrs. Nelson. I'm going to try to talk slowly today. That has been my number one complaint of the justices in prior oral arguments, and also it's going to be difficult being digital. I'd like to start off with a couple things that are not necessarily mentioned in the brief. Firstly, my history in this case, Mrs. Nelson's, just for the court's understanding, is that we were both brought in quite late. I was brought in to perform the trial, but I had no involvement in the case until just prior to that, and then obviously I've been counsel on appeal. And Mrs. Nelson didn't have the opportunity to be at the trial. The attorney has retired, and she is here on the appeal as well. Additionally, former Judge Hoos, who was the presiding justice, resigned, and this was actually one of her last orders in office. I believe she needed to get it done before she took up duties as the state's attorney here in Peoria County. It had been some time since the trial, and my document and my words are going to be condemning of that order, but I completely understand the situation, and I don't want it to reflect anything of me against Judge Hoos. I do believe that she was extremely busy at the time, and that she probably could have done better work and have a better situation. So I just wanted to put that on the table, Your Honors. I think this case is fairly simple. I represent Plaintiff Appellant Hartland Polymers, who I call Hartland, and this is a case against Polychem and their personal guarantee and CEO, John Hart, who are the defendants in the appellees. Hartland sold a chemical processing plant in the Chicagoland area to Polychem and Mr. Hart for over a million dollars. It was something like $1.3 million. It was materials, and it was equipment on the site. But essentially, other than the one dispute, the plant was transferred, the deed went through, and the majority of the purchase price was paid. Eventually, I'm sorry, I'll back up to make sure we have it all. There was waste material that my client agreed to remove from the site, and a third party was retained to perform those actions. That third party performed those actions in 2009, according to Plaintiff, and they requested that a part of the sale funds that had been set aside be released. Of the $1.3 or so million sale, $300,000 were put into an escrow account to be used for waste material cleanup that was listed in their contracts. That's where the dispute came in. The contracts contained a very general statement that the purchaser only purchases waste material, I'm sorry, does not purchase waste material and only purchases usable material, but there was also a specific unusable material to be removed. So that's where the dispute of the parties came. That happened in 2009. There was almost $100,000 left for account out of the 300,000. And what the escrow was functioned to do was that any remaining money would be paid against the personal guarantee note that Mr. Hart had, because again, that $300,000, $200,000 was put onto a note to help fund that escrow account because the bank wasn't willing to give more lending. So essentially what happened was in 2009, Plaintiff requested that those funds be released and paid against the note balance. And there was discussion about that and the buyer and Mr. Hart did not agree and they fought against that and those funds were frozen. That was in 2009. Then in October of 2010, the defendant here stopped payment on the personal note that was originally for the $200,000 balance under the contract. The case was instituted- But what was the balance when they stopped the payments, if you know? Let me see if I can find it very quickly, Your Honor. That's okay. If you don't know, that's off the top of your head. That's fine. Mr. Casey, can we get to the issue that's on appeal? Absolutely, Your Honor. So the judge's order addresses mainly one thing and that is, was Hartland required under the contract, was it its duty there to remove this additional waste material? And she determined that it was, even though that was in dispute by the parties. Okay, so there's two types of waste material. What are they? Hello? I'm sorry, Your Honor. I think your internet connectivity is failing. Um, I can still hear you. I've got a little bit of jumping. I apologize. Can you hear me? Yeah, we can hear you. Yeah, the screen kind of freezes from time to time. What types of waste material were you talking about, Justice Fulbright? You're trying to suggest, I think, there were two kinds of waste material. One was covered under the contract, one was not. Okay. There was waste that was generated by Hartland, the seller, and some of it was in two lists, inventory and unusable inventory. But there was additional waste at this facility that was likely generated by Hartland at the time of sale. It wasn't included in either list. And that's where the dispute came  and the buyer didn't fully inventory the waste and the seller didn't have a good inventory list to give. So that's where there became a discrepancy in what waste was covered where. But the point was... Wasn't that issue ultimately cured though in 2017 when the EPA said it's done, it's cleaned up? Wasn't it cured to both sides' satisfaction at that point in time? Absolutely, Your Honor. And that's a point that we make in argument two in my brief is that when this case was initiated, it was an affirmative defense that there was waste on site and maybe Hartland's responsibility to remove. But it is undisputed that after the EPA issued their unilateral order and Hartland complied with that order and used the rest of the monies in that account to clean up the waste and remediate soil that there was no further demanded performance by either the EPA or by defendant to remove any waste. So while it was a viable affirmative defense while it was ongoing, Your Honor is correct that in 2017 when it was finished, it was no longer in breach even if that was technically a breach at that time. The lawsuit was dismissed. I presume that the 10-year gap or the nine-year gap or the seven-year gap from the first complaint until 2017 was because everybody was still working together on cleanup? I believe so, but there's also a difference between the two. I wasn't on the case at that time, Your Honor. All right. But that makes sense to me. But the points I'll make very quickly is argument number one in my brief is simply that there is a notice provision in the contract. The parties were free to contract and they decided that notice would be one of the requirements. And obviously, if there's a claim breach the party who's claimed to be in breach needs notice of what they're doing incorrectly. At the time that my client had to liquidate the remainder of the funds in the escrow account and said the cleanup was done, there was discussion about cleaning up more and my client had constructive notice but they never had actual written notice that there was more to do. And when they then requested a list of materials saying, well, let's take a look at the list. If it's agreeable, we'd rather just clean it up whether we think it's our responsibility or not and keep moving forward on this contract because ultimately that money in the escrow account wasn't going back to defendant if it wasn't spent on cleanup. It was to be paid against their promissory note. So it actually benefited both parties no matter the outcome. Plaintiff would get payment quicker if the note was liquidated but defendant would save on the interest under the note. So it was kind of a moot point to argue about in first place but they did back in the day regardless. But the fact of the matter remains is that I don't believe plaintiff even was in breach of contract even if the clients that find that it was the duty under the contract to remove additional waste because there was no proper notice and they could not act unknowing what waste they required to move or that they were claimed to be in breach for. Once they received the EPA order, they had a list and they said, we will clean up that list. And after doing so, there was no complaint by defendant of any breach or any more material that needed to be removed. My client did give notice of breach when the payment ceased in 2010. Your Honor, Justice Wright already touched on the fact that it was moot whether or not the defendant, I'm sorry, the plaintiff was in breach by the time this trial happened because the waste had already been cleaned up. And that's essentially my argument, second argument. Additionally, I do know that- Mr. Casey, your internet connection is really messed up. Would it be better if you just went on? Count three of this. Can you hear us, Mr. Casey? The plaintiff was not- Before trial. Would you like me to turn my video off? Well, maybe that'll help because it's pretty bad. I'm almost done anyways. Yeah, but we're not- I just want to say- Everything you have to say. And maybe the rebuttal is wrong, so maybe it is better. I just want to say- Just try to finish briefly. I think this is a pretty simple case when it comes down to it. My third point is just- Any amount of defendant, I'm trying to make a promissory note and under the personal guarantee is that because Heartland may have been in breach when they failed to remove additional waste material, that it was a material breach under the contract that could not be remedied. And their solution was that they don't have to pay the remainder of the note. Clearly, this is an opposite law on performance. The attorney for the defendant at trial actually miscited the law. I don't know in error intentionally to Judge Hoos. He indicated that plaintiff was required to strictly comply with every aspect of the contract before it could come to the court and request any type of act or damages or performance on the part of defendant, which is of course not true. Substantial performance of all material elements of a contract is required, but not strict compliance. And I do believe that tripped up the trial judge a bit as well. But the fact of the matter remains that defendant's actions were inconsistent  as a material breach requiring the unwinding of a contract. And that's shown by when this dispute arose in 2009, defendant did not say we have to unwind this contract because this is so important and so material that the entire contract should be defeated. What they did was continue to pay under the contract for almost a year. And then at court, defendant John Hart, president of the defendant as well, stated that they ceased payment under the personal note to try to compel release of escrow funds. Again, they're seeking remedies under the contract showing that their remedy was damages of releasing the monies from the escrow fund. Again, that was mooted when it was all paid out and there was no specific damages claimed from any alleged breach that defendant brought. The one argument is made at trial, but there are no numbers or anything to support it that because of waste material that was not cleaned up timely, that the plant was shut down by the EPA for some variable amount of time and that customers were lost and income was lost. They did not bring that in a counterclaim for damages and- Well, there was an initial counterclaim though that was dismissed. And I believe the reason it wasn't, this is what I was gonna say. The fact of the matter is that my client performed under the contract, even after the dispute, they still performed essentially what the trial judge said they needed to do, which is I don't believe there's any specific findings in the order that this court needs to reverse. I believe that this court has all the information that they need to rule in favor of plaintiff on counts one and count two. And we would ask that you do so for the amounts currently due under the promissory note and personal guarantee jointly against the defendants. And additionally, attorney's fees under the contract, which are allowable. And I can concede my time until rebuttal unless you have any questions, your honors. All right. I have one question. The trial court did not respond to your argument about notice at all, or did it? I didn't find anything in the order of the record. Did you file petition for rehearing? We did not, your honor. Again, I was not primary counsel on this case. I was hired by Mr. Walker to do the trial. And he just discussed going straight to appeal, especially since Judge Hoos had sat down and would not be able to rehear the case herself. So I honestly, I didn't really have control of that aspect of the case, but I agree with your honor that that was not addressed and it could have been addressed by the trial court. Thank you, Mr. Casey. Thank you. Ms. Nelson. Good morning, your honors. As Mr. Casey said at the beginning, I have been involved in this case on behalf of Polychem Services and John Hart since the trial court ruling came down. My former law partner, Mr. Alcorn, was the primary counsel for Polychem and Mr. Hart at the trial court level. So I will do my best. Ms. Nelson, Mr. Casey, you have a background picture that's a family picture. There we go. Thank you. I'm sorry, your honor. I forgot. I'll just leave my video. Okay. Yes. Ms. Nelson. Thank you, your honor. I think that I would agree with Justice Slyton that there was no mention by the trial court judge of the notice requirement. And I do believe that that was one of the primary arguments of the appellant in this case. From our perspective, justices, it was an argument that while that notice requirement did exist in the contract, it was not strictly adhered to by the parties throughout the course of their dealings in this case. It's very apparent throughout this record that this case, especially at the beginning, from the time of the property lease through the purchase, and then ultimately in the removal and disposal process, that these parties had to be in communication with one another on a constant basis regarding what was going on, who was coming in and out of the plant to remove items. And particularly through JAS, which I think was Mr. Stouffer on, he was employed by Heartland to conduct this removal and disposal process. Throughout the course of that process, I believe the record is clear through Mr. Stouffer on, as well as my client, Mr. Heart, that JAS created spreadsheets and updated them frequently on the items and materials that were being found in the plan itself that needed to be included or disposed of in that issue. If the notice requirement is to be as strictly interpreted as the appellants are asking this court to do, each and every time Mr. Stouffer on needed to submit a new inventory list or get into the plant or receive payment for some services, this formal written notice would have had to have happened because the actual notice requirement, I believe states that it is for any notice, defect or communications. And the key there is communications between the parties. That notice requirement- I'm sorry to interrupt. And I know it messes up the sound when I do so, but I am wondering if this notice and the breach of the purchase agreement or underlying real estate contract isn't moot because everything was cured in 2017. Payments on the promissory note resumed for a year, I think, is that correct? And then ceased because of the escrow. The escrow was eventually chewed up with the cleanup. And so why aren't we simply looking at the promissory note as the agreement to be enforced here? Justice Wright, I completely understand your point there because again, ultimately all the cleanup that was required mostly by the EPA and the backend was done. And that did eat up the $300,000 in the escrow account. So what Judge Hughes actually- I'm sorry. What Judge Hughes actually did, I think, is kind of threw her hands in the air and said, it's just a wash. I don't think she was giving you a pass on the promissory note. I think she was compromising and saying, ah, you're claiming about $200,000 in damages and they're claiming about $200,000 in debt. Done. You know, it all evens out. So why should your client remain on these premises, continue to operate their business without paying on the balance of the promissory note? I believe that our perspective on this, Justice Wright, is that these agreements can't be read by themselves. We can't simply read the purchase agreement without also reading the removal and disposal agreements with the guarantees. I think what my former law partner had argued at trial, and I believe I referenced in my brief, is that these have to be read in paramateria because they each reference each other back and forth. So you can't simply take the purchase agreement out away from the removal and disposal agreement or, and the opposite is also true. So while I tend to agree with you that I think Judge Hoos somehow found that Holly Kem and John Hart were due some form of damages based upon this breach early on in this agreement and that maybe Hartland was due some sort of remedy in the promissory note, I believe what she did do was kind of, without specifically and strictly stating it, just said, well, everybody got hurt here. So let's just everybody walk away at the current status that we're at. Your client dismissed the counterclaim which could have allowed the trial court to receive evidence of damages. The trial court didn't get any concrete evidence of how your business was damaged during the shutdown. So how did she have enough information to consider this a wash? I agree. That counterclaim was dismissed and there were no formal black and white documents brought in, there weren't. I believe the testimony and evidence that was presented at the trial from my review of that trial transcript was that John Hart testified that he and the business had lost approximately $500,000 at least in that particular year from the shutdown due to the EPA shutting the plant down. I do agree, Justice and we can see that that is the only evidence that the trial court had of damages to Polly Kem at that time. I have one more question for you and I'm sorry to interrupt your argument but when the counterclaim was dismissed in 2017 seven years after this litigation started and when the payments on the promissory note resumed why shouldn't I look at that as a waiver of the material breach? I don't believe that payments on the promissory note resumed at any point after I believe October of 2010. Okay. I believe that was the either September, October of 2010 was the last payment on the promissory note and then the notice of default was sent in very early November or December of 2010. Okay, then let me rephrase my question. When the counterclaim was dismissed why isn't that a waiver of the defense of material breach? I don't believe that waives the defense of material breach. I believe that that could waive any finding of a formal order for damages due to Polly Kem services and John Hart. So when there's a material breach there's a couple options available. One is to rescind the contract to put everybody back in their original position but your client didn't request that as a remedy. What they got is they continue to operate the business. They continue to maintain ownership of the land but they have paid $200,000 less than they agreed to pay. Isn't that what happened here? I think ultimately, yes, in some form and fashion that is what happened because again, I don't believe that there was any evidence at trial unfortunately as to what the actual balance of the promissory note would have been at the time that this all commenced in very late 2010. But for rough numbers, I would absolutely say approximately $200,000 was not paid under that promissory note and purchase agreement. Our contention at this point is that the ultimate judgment for defendants here we're asking the court to find and infer that based upon the trial court order that that does lead to the inference that there was a material breach and because of material breach then Polychem Services and John Hart would be absolved of their remaining obligations under that purchase agreement, removal and disposal agreement, all four of those various agreements that are read together in this particular case. But they didn't wanna be resolved without the contractual agreements. They wanted to stay on the premises. They wanted to continue to operate the business. They just wanted not to pay the balance due. And I think that may be one of the failings of the trial court orders that while we do have judgment against the plaintiffs and for the defendants herein, there was nothing further stating what did that mean to the trial court? What was the remedy after that? Did it mean that there was a material breach therefore defendants are absolved of their remaining payments? And if so, why? So I can understand. That's the question. The judge didn't say, let's assume there was a material breach. The judge didn't say the why of why. I agree with you on that point. So can you tell me the why? Why there was a material breach? No. Why you should not pay the balance when you remain on the property and continue to operate the business, but you haven't submitted conclusive evidence of damages? My response to that, Your Honor, is to simply take Mr. Hart's testimony, which was uncontroverted at the time that the company itself, Polychem Services, had lost approximately $500,000 in business due to the shutdown that, again, from the defendant's perspective, was due to the actions or inactions of Heartland Polymers, truly prior to Polychem coming in and taking over this plant. You know, Heartland had known at the time these agreements were signed, Mr. Bilacco, in signing these agreements, knew that there were environmental issues. The purchase agreement- I think you've answered my question and I don't want to keep you from your argument. That's fine, Your Honor. I think that is part of our argument, is that he did know these issues existed and that in and of itself goes to kind of the unclean hands type of mentality that we're asking the court to view here. I think one of the things that Judge Hoos does get the benefit of that really I don't, nor do the justices get the benefit of, is she got to view the witnesses testify. So she got to weigh what Mr. Heart was testifying to and his mannerisms and how he testified against how Mr. Bilacco testified and judge that ultimate credibility. Assuming there was a material breach, when you speak in terms of unclean hands, that goes to an equitable remedy of just being fair to both sides. But this isn't an action inequity. You're right, Your Honor. And again, I think maybe that was an improper term for me to use. I think my point in that is simply to show the lack of Heartland being upfront about the condition and nature of the property. More that they knew there were issues to start with and went ahead and perpetrated that none of those issues existed. And so when they're called on the carpet about those issues later, ultimately that had to be forced by the EPA. Holly Kim says, hey, whoa, whoa, this cleanup isn't done. We need to do something about this. And there's pushback. There's constant pushback. And until the EPA gets involved, then they do it because they're told by the EPA, which Mr. Blanco even said in his testimony, Heartland was the one who had issues on this property. The EPA said Heartland had to clean it up. That goes to the overall general credibility of entering into these agreements and agreeing to remove and dispose of all unusable inventory and waste materials throughout the course of these agreements. So we're asking the court here to uphold the trial judge's ruling. We're asking the court here to infer that when the trial court makes that judgment for the defendants, even though there are not all of those specific findings of fact, that those are those facts and issues that are in controversy should be found and inferred to have been found by the trial court in favor of Polychem Services and Mr. Heart based upon the ultimate ruling here of judgment for the defense. Your honors, thank you very much for your time today. Thank you, Ms. Nelson. Mr. Jensen and your rebuttal. Briefly, your honor. Thank you. Firstly, Ms. Nelson spoke about communications during the process and the cleanup and how that was a waiver of the notice provision. I didn't find any evidence or testimony of specific communications that they were stating were examples of that waiver. I don't know, and I don't know if anybody right now here knows how much the parties actually communicated directly with each other after the sale. JAS Environmental was a third party that was coming in to do the removal. And it's very just as likely that JAS acted as mediary and dealt with both parties to effectuate that versus the parties communicating all the time. The point that I made with the notices is that this was a significant breach they were claiming to not continue to clean up waste. And if that was that significant, they needed to follow the notice provision. My client followed the notice provision when it issued the default and they did not. Going to your honor Wright's points, I don't think that Judge Hoos's judgment for the defendant on all counts can be upheld under either theory under the fact of damages for breach. Because again, they did drop the counterclaim. They didn't plead any specific damages that were supported. And Mr. Hartzony was essentially speculation. It was a rounded number that didn't have any support behind it. So I don't believe that they're entitled to offset for that. As far as the material breach goes, I believe your honor was correct again, saying why would they continue under the contract? Why would they not? Why do they get to keep the plant, keep the operations during this time? And that's the point. They never asked to rescind the contract. They never said that this contract is over. They just said, we don't wanna pay the rest of the amount we are due. And on page 17 of my brief, the Radiant Star Enterprise versus Metropolis Condo Association, a 2018 first district case is where I was talking about inconsistent arguments that a defendant is not able to act under a contract after a contract to be rescinded or otherwise cancel all performance there under. The parties had both substantially performed at the time of the alleged breach. The majority of the funds had been transferred. The plant had been transferred for years and been used. So I don't believe there's any way for the trial court to uphold, I'm sorry, to come to this conclusion with what was presented to them. Council, I'm sorry to interrupt you again, but at the time the lawsuit was initiated in 2010, there was a material breach, but at the time of trial, perhaps that breach had been cured. How do we measure, what timeframe do we measure this by? The time the lawsuit was filed in 2010, was there a breach or the time of the trial in 2019 had that breach been cured? I'm sorry, you cut for one second. How do we measure what? I heard everything, but what you want me to measure. That's probably my fault. If there was a material breach in 2010, there was a cured material breach in 2019. So how can we uphold Judge Hughes's implicit finding that there was a material breach  Are we measuring the timing of the material breach by 2010 or 2019? Have I answered your confusion or helped you with the confusion? I think so, your honor. I guess I would say that I don't think that she did implicitly find it was a material breach. I believe that your honor said earlier about, so to speak, seeing the people meeting in the middle is a very common theme. And that is probably her aim of damages here, damages there, let's hold on. If she considered what we concluded that day, she said, well, should you give the plant back? What should happen? Because she did understand that if it was a material breach and she found that, there would have to be more action than just the forgiving of the current balance of the promissory note with the personal guarantee. She understood that it would have happened bigger than that. But as I mentioned, based on the defendant continuing to act under the contract, both in 2009 and 10, after they alleged the breach, because that's when the breach was really alleged, was when Hartland said, we want the escrow money back. We don't want to remove any more waste. And Holly Kim said, you need to remove more waste. That was in 2009. And they continued to pay for almost a year after that. And that's evidence enough that the breach was not material. And so I would say, you don't need to measure the breach. I think the alleged breach was at best an affirmative defense. And at the time it was active, if it was in breach regarding notice, it would have prevented plaintiff from collecting on a personal note until cured. And I believe after it was cured, it could no longer be used as a defense to payment. And without proving damages from breach, they don't get offset, Your Honor. Thank you. Any other questions? Judge Ryan, Judge Holders? Oh, thank you.  Thank you, Mr. Chancy. Thank you both for your argument today. Thank you, Justices. Just as a matter of advisement. Thank you. Oh, Tom. Tom, I do have one question just because of the technical difficulties. If I may. Mr. Casey, who is your provider or connectivity? Is it Comcast? Your Honor, I actually have an excellent fiber connection, but the laptop with the camera built into it that I have to use can only operate on Wi-Fi. So I can't have a plugged in connection like a personal computer to use. Okay. I apologize. Find out if there's a breach with your provider. Thank you, Your Honor. Anyway, we'll take a short recess now.